# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
October 5, 2010 Session

## STATE OF TENNESSEE v. UNDRAY LUELLEN

### Direct Appeal from the Criminal Court for Shelby County
### No. 07-08953    W. Otis Higgs, Jr., Judge

### No. W2009-02327-CCA-R3-CD  - Filed June 27, 2011

The Defendant-Appellant, Undray Luellen, was indicted by the Shelby County Criminal Court for three counts of especially aggravated kidnapping, one count of aggravated robbery, and one count of aggravated burglary. The aggravated robbery count was dismissed during trial, without opposition from the State, following the defense's motion for judgment of acquittal. At the conclusion of the jury trial, Luellen was convicted of two counts of especially aggravated kidnapping, a Class A felony; one count of aggravated kidnapping, a Class B felony, and one count of aggravated criminal trespass, a Class A misdemeanor. He was sentenced as a Range I, violent offender to two consecutive sentences of twenty-two years for the especially aggravated kidnapping convictions and a concurrent ten-year sentence for the aggravated kidnapping conviction. He was also sentenced to a concurrent sentence of eleven months and twenty-nine days for the aggravated criminal trespass conviction. The trial court merged the aggravated kidnapping conviction involving the child victim with the especially aggravated kidnapping conviction involving the child victim. The trial court then imposed an effective sentence of forty-four years in the Tennessee Department of Correction. In this appeal, Luellen argues: (1) the trial court erred in admitting three items of testimony; (2) the trial court erred in refusing to consolidate his two indictments for especially aggravated kidnapping; (3) the trial court erred in ruling that his prior conviction for aggravated robbery was admissible for impeachment purposes; (4) the cumulative errors at trial required a reversal; and (5) his sentence was excessive. Upon review, we affirm the judgments of the trial court but remand for entry of a corrected judgment to insert a service percentage of seventy-five percent for the aggravated criminal trespass conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgment

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and J. C. MCLIN, JJ., joined.

Robert W. Jones, District Public Defender; Robert C. Felkner and A. Michelle Lynn, Assistant Public Defenders, Memphis, Tennessee, for the Defendant-Appellant, Undray Luellen.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On June 17, 2007, the adult victim, Terri Erby, and her five-year-old granddaughter, H.E., were asleep at the victim's home in Memphis, Tennessee. The victim's eighteen-year-old son was also asleep in the home. At approximately 12:30 a.m., the victim heard a noise at her back door. When she got out of bed to check on the noise, she saw Luellen and another man attempting to break into her home. The victim ran into her son's room, but he was still asleep. She then ran to her bedroom, locked the door, and got under the covers with her granddaughter. Luellen barged into the bedroom, pointed a gun at the victim, and forced her to get out of bed. The victim began to panic, and Luellen started asking for Tanishia Erby, the victim's daughter and Luellen's ex-girlfriend. The victim begged Luellen not to hurt them. Luellen told his accomplice not to bother the victim's son since he was asleep.

The victim told Luellen several times that Tanishia was not at her home and that she was at the victim's sister's home, even though the victim knew Tanishia was at the movies with a friend. However, Luellen became very agitated that Tanishia was not there. He then forced the victim and her granddaughter at gunpoint to leave the home with him and the accomplice, who had a knife. The victim described Luellen's weapon, "It was a big, black gun. That's all I can remember. I think it was a nine millimeter[.]" The victim then testified that the gun that was taken from Luellen at the time of his arrest looked similar to the gun Luellen had the night of her kidnapping. The victim, her granddaughter, Luellen, and the accomplice left the home in the victim's car. As they were on their way to the victim's sister's house, Luellen forced the victim to call Tanishia's cell phone and to tell her that H.E., Tanishia's daughter and the victim's granddaughter, had been injured and they were taking her to the hospital. During the victim's phone conversation with Tanishia, she tried to secretly inform her daughter that Luellen had kidnapped her and H.E. Tanishia finally asked the victim if Luellen was present, and the victim responded affirmatively. The victim also called her sister. As they drove up to the victim's sister's house, Luellen observed several people in the yard and instructed the victim not to drive there. Luellen then called a female friend and asked her to meet them on Chuck Street. When the friend arrived, Luellen told

her that he needed to use her car because the victim's car was "hot." The friend refused to switch cars, and Luellen forced the victim and H.E. out of the victim's car and into the backyard of a house on Chuck Street. At that point, Luellen started making numerous phone calls in an attempt to locate Tanishia. During each call, Luellen informed the individuals on the line that he was going to hold the victim and H.E. hostage until Tanishia arrived.

Luellen told the victim that he would hurt or kill her and H.E. if Tanishia did not appear, and the victim pleaded with him not to hurt H.E. She told Luellen to take her or kill her instead of harming H.E. Luellen finally agreed not to hurt H.E. During this time period, H.E. was distraught, clung to the victim, and repeatedly asked to go home. The victim was aware that Luellen had previously kidnapped Tanishia and had a history of violent behavior. Luellen, his accomplice, the victim, and H.E. stayed in the backyard for about an hour before Luellen forced the victim and H.E. over a fence, and they all got back in the victim's car. He then told the victim to drive to the expressway and stop at a gas station. Luellen took money from the victim for gas and continued to make phone calls in an attempt to locate Tanishia. During each of these calls, Luellen informed the other party that he would release the victim and H.E. if Tanishia would appear. He also continued to threaten the victim. The victim was forced to drive around for approximately one hour before she was told to stop at the Waterfront Apartments. At this point, several hours had passed from the time of the initial kidnapping.

After arriving at the apartments, Luellen and the accomplice took the keys to the car, told the victim not to move, and disappeared into an apartment for a short period of time. Once they were gone, the victim rescued H.E. from the backseat and was attempting to flee when the accomplice returned to the car. The accomplice forced the victim and H.E. back into the car and informed the victim that he would kill her if she refused to perform oral sex on him. The accomplice then brandished his knife and again told the victim that he would cut H.E. if the victim did not perform oral sex on him. Before the victim was forced to comply, Luellen returned to the car. Luellen told the victim that he loved Tanishia. Luellen then said that "he wasn't going back to jail, he couldn't do that, [and] he wasn't going to do that." He also said that he wanted Tanishia "to change her story [regarding his previous kidnapping and assault of Tanishia as charged in the first indictment]". He said that "[i]f [Tanishia] changed her story[,] everything would be all right." Finally, he told the victim that he would let her and H.E. go, but she was not to tell the police that he was responsible for the break-in or their kidnapping. Luellen said that if she informed the police about this incident he would kill her. He then released the victim and H.E. and allowed the victim to drive away in her car.

At the conclusion of trial, the jury convicted Luellen of two counts of especially aggravated kidnapping, one count of aggravated kidnapping, and one count of aggravated

criminal trespass. On September 9, 2009, the trial court sentenced Luellen to an effective sentence of forty-four years in the Tennessee Department of Correction. Luellen timely filed a motion and an amended motion for a new trial, which the trial court denied by written order on November 3, 2009. Luellen then filed a timely notice of appeal.

**ANALYSIS**

**I. <u>Admission of Testimony.</u>** Luellen argues that the trial court erred in admitting three items of testimony at trial which he claims were irrelevant to his guilt or innocence and were extremely prejudicial. In response, the State contends that the admission of this testimony was proper.

The Tennessee Supreme Court has generally held, "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere in the absence of abuse appearing on the face of the record." <u>State v. Plant</u>, 263 S.W.3d 854, 870 (Tenn. 2008) (citing <u>State v. Dobson</u>, 254 S.W.3d 378, 392 (Tenn. 2008); <u>State v. Dubose</u>, 953 S.W.2d 649, 652 (Tenn. 1997); <u>State v. Van Tran</u>, 864 S.W.2d 465, 477 (Tenn. 1993); <u>State v. Harris</u>, 839 S.W.2d 54, 73 (Tenn. 1992)). A trial court is found to have abused its discretion when it applies "an incorrect legal standard or [reaches] a decision which is illogical or unreasonable and causes an injustice to the party complaining." <u>State v. Ruiz</u>, 204 S.W.3d 772, 778 (Tenn. 2006) (citing <u>Howell v. State</u>, 185 S.W.3d 319, 337 (Tenn. 2006)).

This court must apply the abuse of discretion standard when reviewing a trial court's decision regarding the relevancy of evidence under Rules 401 and 402. <u>Dubose</u>, 953 S.W.2d at 652 (citations omitted). Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence which is not determined to be relevant is inadmissible. Tenn. R. Evid. 402. In addition, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Unfair prejudice has been defined by the Tennessee Supreme Court as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'" <u>State v. Banks</u>, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Fed. R. Evid. 403, Advisory Committee Notes). "Prejudice becomes unfair when the primary purpose of the evidence at issue is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror.'" <u>State v. Collins</u>, 986 S.W.2d 13, 20 (Tenn. Crim. App. 1998) (quoting M. Graham, <u>Handbook of Federal Evidence</u> 182-83 (2d ed. 1986)).

**A. Luellen's Previous Kidnapping and Assault of Tanishia Erby.** Luellen contends that the trial court erred in admitting irrelevant evidence regarding the first indictment, which charged him with the kidnapping and assault of Tanishia Erby. He argues that this testimony was extremely prejudicial because the previous incident involved a similar kidnapping of Tanishia Erby by Luellen and the trial court neglected to provide a curative instruction that Luellen was only on trial for the second indictment involving Terri Erby and her granddaughter. He also argues that the trial court erred in admitting evidence that Luellen was trying to persuade Tanishia to request a dismissal of the charges related to the first indictment. He asserts that the admission of this testimony was not harmless, given the impact that it had on the jury.

The State contends that admission of this testimony was proper because it "established Ms. Erby's frame of mind with regard to the defendant's actions against her." The State acknowledges that no curative instruction was provided but contends that the defense had the opportunity to thoroughly cross-examine Terri Erby regarding Luellen's relationship with her daughter. Finally, the State argues that if such an admission was error, the error was harmless given the overwhelming proof of Luellen's guilt. We agree with the State.

We initially note that Luellen failed to make a contemporaneous objection to the evidence that he was trying to persuade Tanishia to request a dismissal of the charges related to the first indictment. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Accordingly, any argument regarding the admission of this evidence is waived.

Here, regarding the admission of evidence of the first indictment, Terri Erby testified that she was afraid of Luellen because "[h]e had already been violent towards [her] daughter." The defense made a general objection, and the trial court held a hearing outside the presence of the jury. During this jury-out hearing, Terri Erby testified that Luellen had a "violent past" with her daughter, Tanishia Erby. She said that she was "terrified" of Luellen because he had allegedly kidnapped her daughter and "shot in her car and ran her off the road." She said that Luellen was out on bond for committing these offenses against her daughter when he committed the crimes against her and her granddaughter. She also stated that she was "terrified for [her] grandbaby [sic] because [she] really thought [Luellen] would hurt [the child] to get back at Tanishia because he knew how she loved her baby." Following this testimony, the defense objected on the ground of hearsay, since Terri Erby did not personally witness Luellen's offense against her daughter and argued that this evidence was prejudicial, since the first and second indictments should have been consolidated for trial.

-5-

The State responded that the prior incident against Tanishia Erby was public record. Ultimately, the trial court held that the incident involving Tanishia Erby was admissible:

> Well, I'm trying to balance the equities here. [Terri Erby] has a right to testify that after being seized by the defendant, based upon prior conduct she was frightened, she was scared and she had personal knowledge about it. So, I'm going to allow her to answer those questions. I will tell the jury that . . . the defendant was on trial for the charges in this [second] indictment and [this second indictment] alone. But, by the same token I don't think you ought to get into [the facts of the first indictment involving Tanishia Erby] generally. But, [Terri Erby's] state of mind, why she felt the way she did, what it was based upon that's admissible and I'm going to allow that. But, bear in mind as you proceed, keeping [defense counsel's] objection in mind.

Following the court's ruling, the defense also lodged an objection pursuant to Rule 404(b). The defense claimed that the State was attempting to use the prior bad act against Tanishia Erby to prove "conduct conforming with [a] character trait" in the case involving Terri Erby and her granddaughter. The defense claimed, "I don't think [it] is relevant and it's highly prejudicial." It added that the prior offense against Tanishia Erby had not been proven. The court stated that the record would reflect the objection on those grounds. Notably, the defense never requested a jury-out hearing on its Rule 404(b) objection. Once the jury was brought inside the courtroom, Terri Erby testified that she had been afraid of Luellen because he had previously kidnapped and run her daughter off the road.

Despite the fact that the trial court indicated it would provide a curative instruction to the jury regarding the fact that Luellen was charged with only the counts in the second indictment, the record does not show that an instruction along these lines was ever given.

Rule 404(b) states:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

-6-

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Other crimes, wrongs or acts are admissible under Rule 404(b) when relevant to an issue other than the defendant's character, such as intent, motive, identity, common scheme or plan, or absence of mistake. State v. McCary, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003).

Because the defense failed to request a jury-out hearing based on its Rule 404(b) objection, we conclude that Luellen has waived his argument under Rule 404(b). Although the trial court determined that the evidence regarding the kidnapping and assault of Tanishia Erby was admissible on the ground that it showed Terri Erby's state of mind at the time of her and her granddaughter's kidnapping, we conclude that this evidence was also admissible because it established Luellen's motive for committing the offenses in the second indictment. Terri Erby testified that Luellen told her that he was kidnapping her and her granddaughter so that Tanishia Erby would ask for a dismissal of the charges in the first indictment. For this same reason, we conclude that this evidence was relevant and that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Moreover, we conclude after reviewing this testimony that the trial court did not abuse its discretion in admitting this evidence. The evidence of Luellen's guilt was overwhelming, and we find no errors "involving a substantial right [that] more probably than not affected the judgment" or resulted in "prejudice to the judicial process." See Tenn. R. App. P. 36(b). Accordingly, Luellen is not entitled to relief on this issue.

**B. Sexual Remarks Made by Luellen's Accomplice.** Luellen argues that the trial court erroneously allowed the victim to testify about specific sexual remarks made by his accomplice during the offense in this case. He claims that the evidence was, at best, irrelevant, and, at worst, was prejudicial since it showed that Luellen associated "with thugs ready to commit unspeakable acts in front of a young child." Moreover, Luellen argues that even if the statements made by the accomplice were relevant to an issue at trial, he claims that they should have been excluded because they were hearsay.

The State contends that Luellen has waived this issue for failing to make a contemporaneous objection the first time that this evidence was introduced. It also argues that when the defense later objected to this evidence, the objection was on the ground of relevance rather than hearsay, and therefore, Luellen has waived his hearsay argument because he did not object to the testimony on hearsay grounds at trial. Waivers notwithstanding, the State argues that Luellen has failed to prove that he was prejudiced by

the admission of this testimony. Moreover, the State contends that Luellen was able to thoroughly cross-examine Sergeant Harris regarding any inconsistencies in the victim's statement to law enforcement regarding these sexual remarks from the accomplice. Finally, the State argues that any error regarding the admission of this testimony is harmless. We agree with the State.

Here, the victim testified that Luellen's accomplice made "[s]exual remarks" to her in the presence of her five-year-old granddaughter. At that point, the defense failed to make an objection. Later in her testimony, the victim stated, "[The accomplice] said that he would kill [my granddaughter] if I didn't perform oral sex with him." The defense objected on the ground of relevance, but the trial court overruled the objection. The victim went on to testify that the accomplice pulled out a knife and threatened to "cut" her granddaughter if she did not perform oral sex on him.

Although Luellen objected to this evidence on the ground of relevance at trial, he now argues that the evidence was inadmissible hearsay. We agree that a party on appeal is bound to the ground of the objection it asserted at trial. See State v. Schiefelbein, 230 S.W.3d 88, 129 (Tenn. Crim. App. 2007). Notwithstanding waiver, we conclude after reviewing this testimony that the trial court did not abuse its discretion in admitting this evidence. The evidence of Luellen's guilt was overwhelming, and we again find no errors "involving a substantial right [that] more probably than not affected the judgment" or resulted in "prejudice to the judicial process." See Tenn. R. App. P. 36(b). Accordingly, Luellen is not entitled to relief on this issue.

**C. Testimony Regarding Luellen's Arrest.** Luellen contends that the trial court erred in allowing Sergeant Harris to testify about his arrest. He claims the circumstances surrounding his arrest were not relevant, given that Terri Erby could not positively identify the gun taken from Luellen at the time of his arrest as the same gun he used in her and her granddaughter's kidnapping. Luellen also argues that the admission of this evidence was prejudicial because the jury heard evidence not only of Luellen's possession of a gun at the time of his arrest but also of a "stand-off" with U.S. Marshals, involvement of a S.W.A.T. (Special Weapons and Tactics) team in his arrest, and the removal of an infant from the home during the course of his arrest.

The State asserts that the arrest testimony was relevant to the identification of Luellen as the perpetrator and the corroboration of Terri and Tanishia Erby's testimony regarding Luellen's weapon. It further argues that "a long line of Tennessee cases has permitted the introduction of evidence that a person tried to evade prosecution, including resisting arrest, as circumstantial proof permitting an inference that the resisting person had a consciousness of guilt." See State v. Kevin Allen Gentry, No. E2008-02226-CCA-R3-CD, 2010 WL

376597, at *11 (Tenn. Crim. App., at Knoxville, Feb. 3, 2010) (quoting Neil P. Cohen et al., Tennessee Law of Evidence, § 4.01) ("A long line of Tennessee cases has permitted introduction of evidence that a person tried to evade prosecution. This includes proof that the person fled or tried to flee the scene of a crime, hid to avoid apprehension, attempted suicide, resisted arrest, escaped from custody, or did not appear for trial. This circumstantial proof has been held to permit an inference that the fleeing person had a consciousness of guilt, criminal intent, knowledge or was somehow connected with the offense in question."), perm. to appeal denied (Tenn. June 30, 2010). Finally, the State claims that any error regarding the admission of this evidence was harmless given the overwhelming evidence of Luellen's guilt and the fact that Luellen was convicted of two lesser included offenses in this case. We agree with the State.

At trial, when Sergeant Harris began testifying about Luellen's arrest, the trial court granted, at the defense's request, a jury-out hearing to determine the admissibility of this testimony. During this hearing, Sergeant Harris identified a nine millimeter gun that he recovered from Luellen at the time of his arrest at 3289 Fairbanks Street in Memphis. He stated that he and other officers arrived at this address to "follow up" on information that they had received regarding Luellen's whereabouts. As Sergeant Harris and other officers arrived, the homeowner of the house on Fairbanks Street appeared and unlocked the residence for the officers. The officers subsequently found Luellen in the master bedroom of the house, where he had fallen from the attic. Luellen placed the nine millimeter gun under his chin, and the officers began negotiating with him because they had been informed that the homeowner's child was also inside the house. As they were negotiating with Luellen, they were able to get the baby away from the house through a window. Sergeant Harris stated that the S.W.A.T. team was en route to the house at the time they removed the baby. When the S.W.A.T. team arrived, Luellen "threw the gun down and surrendered." Sergeant Harris stated that Luellen had been telling the officers to "[g]o ahead and kill him" during the negotiations.

At the conclusion of this testimony, the defense argued that the testimony surrounding Luellen's arrest was irrelevant to the offenses against Terri Erby and her granddaughter on June 17, 2007. The defense argued that Terri Erby had "already identified that this was the gun or was a gun similar to [the nine millimeter recovered by Sergeant Harris at the time of the arrest]." In addition, the defense claimed that Luellen's arrest and subsequent charge for convicted felon in possession of a handgun took place nine or ten days after the incident on June 17, 2007, and that "the probative value of this [evidence] is highly outweighed by the prejudicial effect against Mr. Luellen." The defense asserted that the mention of the arrest and gun charge was an attempt by the State to present as much negative evidence as possible against Luellen from the three indictments. The defense stated, "And, that's why this case should have either been one case to begin with or we should [have found] a way to just keep

[from] getting into these details of the other cases." In response, the State argued that this evidence should be admitted since this was the gun that was taken from Luellen's hand during his arrest. In addition, the State asserted that testimony regarding the gun corroborated Terri Erby's testimony regarding the gun used and the willingness of Luellen to have a shoot-out with the police during the June 17, 2007 incident involving her and her granddaughter.

At the conclusion of the jury-out hearing, the trial court overruled the defense's objection and held that it would allow "evidence of [Luellen's arrest] and apprehension and the recovery of the weapon and the facts and circumstances surrounding his arrest [.]" The court also held the following:

> One other thing that occurred to me about that evidence and . . . if I recall the defendant fled from the scene [of the crime on June 17, 2007,] and hid out for eight or nine days. I'll tell the jury in charge, as you well know, I don't have to tell you, that evidence of flight becomes significant in the case. It's a hiding out, it's a leaving the scene. All those factors, I think all of this is relevant and I'm going to allow it."

Sergeant Harris subsequently identified the nine millimeter gun that Luellen possessed at the time of his arrest and testified about Luellen's stand-off with U.S. Marshals, the involvement of the S.W.A.T. team in his arrest, and the fact that an infant had to be removed from the house during his arrest.

Although Luellen objected to this evidence pursuant to Rule 402 and 403, he now also suggests that the evidence should not have been admitted pursuant to Rule 404(b). We agree that a party on appeal is bound to the ground of the objection it asserted at trial. See Schiefelbein, 230 S.W.3d at 129. Notwithstanding waiver, we conclude after reviewing this testimony that the trial court did not abuse its discretion in admitting this evidence. The evidence was relevant and its probative nature was not substantially outweighed by the danger of unfair prejudice. The evidence identified Luellen as the perpetrator, corroborated the victim's description of the weapon, and showed Luellen's flight. Again, the evidence of Luellen's guilt was overwhelming, and we find no errors "involving a substantial right [that] more probably than not affected the judgment" or resulted in "prejudice to the judicial process." See Tenn. R. App. P. 36(b). Accordingly, Luellen is not entitled to relief on this issue.

**II. Consolidation of Indictments.** Luellen argues that if the evidence regarding the first indictment, the kidnapping and assault of Tanishia Erby, as well as evidence that Luellen was trying to persuade Tanishia to request the dismissal of the charges related to the first

indictment were admissible, then the trial court erred in refusing to grant his motion to consolidate the case involving Tanishia Erby with the case involving Terri Erby and her granddaughter. He contends that this court has previously held that joinder is appropriate where the later offense was "part of a continuing plan to avoid prosecution and conviction" in a prior case. State v. Larry D. LaForce, II, No. E2007-00334-CCA-R3-CD, 2008 WL 538969, at *8 (Tenn. Crim. App., at Knoxville, Feb. 27, 2008) (concluding that the two cases were properly joined and that the trial court did not err in denying the defendant's motion to sever).

In response, the State argues that Luellen has waived this issue by failing to present an adequate record containing a copy of the first indictment. We agree. See Tenn. R. App. P. 24(b) ("[T]he appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."). Waiver notwithstanding, the State asserts that the offenses in the first and second indictments took place three months apart and were factually distinct. Finally, the State contends that in the event the failure to consolidate was in error, such error was harmless because of the overwhelming evidence of Luellen's guilt. We agree with the State.

Here, on February 18, 2009, Luellen filed a motion in limine to prevent any mention, without a hearing outside the presence of the jury, of the alleged prior kidnapping and assault of Tanishia Erby and his subsequent arrest and alleged possession of a nine millimeter gun while threatening suicide.[1] Despite filing this motion in limine, the defense during a pre-trial hearing the first day of trial requested that the court join the following three indictments into a single trial: (1) the indictment charging Luellen with the kidnapping and assault of Tanishia Erby; (2) the indictment charging Luellen with the especially aggravated kidnapping of Terri Erby and her granddaughter, as well as the aggravated robbery and aggravated burglary of Terri Erby; and (3) the indictment charging Luellen with the convicted felon in possession of a handgun. The defense argued that these three indictments should be consolidated in one trial because the facts were interrelated. In response, the State noted that the defense had originally filed a motion to sever the cases[2] and had requested the State to disclose which of the three indictments it intended to bring to trial first. At that point, the State had informed the defense that it was going to try the case involving Terri Erby and her

_____

[1] We note that neither the first indictment charging Luellen with kidnapping and assault of Tanishia Erby nor the third indictment charging him with convicted felon in possession of a handgun were included in the record. All information about the charges within these two indictments has been gleaned from the trial transcript.

[2] No motion to sever was included in the record on appeal.

-11-

granddaughter first. Regarding whether the three indictments should currently be joined, the State argued that the case involving Tanishia Erby occurred approximately three months prior to the case involving Terri Erby and her granddaughter and asserted that these first two cases were not "intertwined factually." The State acknowledged that the case involving Terri Erby and her granddaughter and the case involving the gun charge were "tightly woven" and informed the court that it intended to mention the gun charge in the instant trial.

At the close of the hearing, the trial court denied the defense's motion for consolidation, stating that it would allow the State to decide whether to try the three indictments separately or together. The following day, defense counsel made an additional motion that the State be prevented from mentioning the facts related to the first and third indictments during trial and informed the court that it would be making timely objections regarding any testimony referring to those cases. The State acknowledged that it would bring in proof regarding the first and third indictments but promised to address the court regarding this proof whenever appropriate.

A trial court's decision "to consolidate or sever offenses pursuant to Rules 8(b) and 14(b)(1) [is] to be reviewed for an abuse of discretion." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). This court will not interfere with the exercise of this discretion unless the record shows that the defendant was prejudiced by the trial court's ruling. State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982).

Tennessee Rule of Criminal Procedure 8(b), which governs permissive joinder of offenses, states that "[t]wo or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13, if: (1) the offenses constitute parts of a common scheme or plan; or (2) they are of the same or similar character." Tenn. R. Crim. P. 8(b). Tennessee Rule of Criminal Procedure 13(a) states that "[t]he court may order consolidation for trial of two or more indictments, presentments, or informations if the offenses and all defendants could have been joined in a single indictment, presentment, or information pursuant to Rule 8." Nevertheless, Tennessee Rule of Criminal Procedure 14(b)(1) states that "[i]f two or more offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others." Tenn. R. Crim. P. 14(b)(1).

We agree with the State that Luellen has waived this issue because he failed to include a copy of the first indictment regarding the kidnapping and assault of Tanishia Erby. Waiver notwithstanding, we conclude that the trial court did not abuse its discretion in refusing Luellen's request to permissibly join the first indictment and the second indictment. As we

have explained, the evidence from the first indictment was admissible in this case because it established Terri Erby's state of mind and Luellen's motive to commit the crimes in this case. Moreover, we further conclude that Luellen was not prejudiced by this ruling because, had the indictments been joined, the jury would have heard decidedly more information about the offenses from the first indictment. We note that the trial court was under no obligation to join the first and second indictments. Luellen is not entitled to relief on this issue.

**III. <u>Admission of Prior Conviction for Impeachment Purposes.</u>** Luellen asserts that the trial court erred in ruling that his previous conviction for aggravated robbery was admissible for impeachment purposes. He claims that the admission of his prior conviction for aggravated robbery was prejudicial since he was initially charged with aggravated robbery at trial. He also argues that "the allowance of the prejudicial prior conviction[] impacted the trial result despite the Appellant's failure to make an offer of proof." He claims that the court "essentially neutered the Defendant's right to present a defense through favorable witnesses" since he put on no proof at trial and his "theory of defense would only have presented itself through favorable witnesses." Finally, he argues that the trial court abused its discretion in failing to weigh the probative value of the evidence against its prejudicial effect.

In response, the State argues that the trial court did not abuse its discretion in admitting the prior conviction for impeachment purposes and that Luellen has failed to establish prejudice. Moreover, the State contends that "the Tennessee Supreme Court has specifically prohibited instruction to the jury on unnamed felonies for impeachment purposes out of concern that such ambiguity may lead to speculation by the jury." <u>See</u> <u>State v. Taylor</u>, 993 S.W.2d 33, 34-35 (Tenn. 1999) (referring to a prior conviction as a "felony involving dishonesty" is insufficient for the purposes of Rule 609(a)(3)); <u>see also State v. Galmore</u>, 994 S.W.2d 120, 122 (Tenn. 1999) (referring to a prior robbery conviction as a "felony conviction" allowed the jury "to speculate as to the nature of the prior conviction" and provided "inadequate information for a jury to properly weigh the conviction's probative value as impeaching evidence"). Moreover, the State argues that because the aggravated robbery count of the indictment was dismissed, Luellen cannot claim that he was prejudiced by the admission of his prior conviction since he was no longer charged with the same crime. Finally, it claims that the admission of the prior conviction for aggravated robbery, a crime of dishonesty, was proper because it was probative of Luellen's credibility. <u>See</u> <u>State v. Welcome</u>, 280 S.W. 3d 215, 223 (Tenn. Crim. App. 2007) (holding that the trial court did not abuse its discretion in admitting the prior aggravated robbery conviction in a case in which the defendant was charged with aggravated robbery and the trial court held that "credibility [was] everything in [the] case"); <u>State v. Corey Gilliam</u>, No. W2007-02401-CCA-R3-CD, 2009 WL 3015122, at *7 (Tenn. Crim. App., at Jackson, Sept. 22, 2009) (holding that

"[r]obbery is an offense involving dishonesty that is highly probative of credibility"). We agree with the State.

This Court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. See State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003). The admissibility of an accused's prior convictions is governed by Rule 609 of the Tennessee Rules of Evidence. Rule 609 permits the accused's credibility to be impeached by prior criminal convictions on cross-examination if certain conditions and procedures are satisfied. The conviction must be for a crime (1) punishable by death or incarceration in excess of one year, or (2) involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Generally, convictions that are ten years old or more cannot be used for purposes of impeachment. Tenn. R. Evid. 609(b). The State is also required to give reasonable written notice prior to trial of the particular convictions it intends to use to impeach the accused. Tenn. R. Evid. 609(a)(3). Before permitting the use of a prior conviction, the trial court must find that the probative value of the conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Id. The trial court shall rule on the admissibility of the prior conviction before the accused testifies. Id. If the court rules that the prior conviction is admissible to impeach, there is no requirement that the accused testify at trial in order to later challenge the court's ruling on the admissibility of the prior conviction. Id.

"The mere fact a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness." State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citing State v. Miller, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987)). However, our Supreme Court has recognized when the impeaching conviction is the same as the crime for which the accused is being tried the unfair prejudicial effect on the substantive issues greatly increases. State v. Mixon, 983 S.W. 2d 661, 674 (Tenn. 1999). Therefore, trial courts should engage in a two prong analysis when weighing the probative value of the impeaching conviction against its prejudicial effect. Trial courts are required to expressly (1) "analyze the relevance the impeaching conviction has to the issue of credibility," as well as (2) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992).

"[T]rial courts should explain on the record how the impeaching conviction is relevant to the defendant's credibility." Mixon, 983 S.W.2d at 674. Trial courts have been repeatedly instructed to "explicitly state their reasons for allowing or disallowing the admission of prior conviction evidence for the purpose of impeachment so the appellate courts may properly determine the rule has been followed in reaching the decision." State v. Long, 607 S.W.2d

482, 485 (Tenn. Crim. App. 1980) (citation omitted).  In order to determine whether a prior felony conviction is probative of the defendant's credibility, the trial court must consider whether the prior conviction involves dishonesty or false statement.  Waller, 118 S.W.3d at 371 (citing State v. Walker, 29 S.W.3d 885, 890 (Tenn. Crim. App. 1999)).

Here, the trial court determined that the prior conviction for aggravated robbery was admissible.  However, the court did not determine the similarity between the crime on trial and the prior felony conviction, did not consider whether the prior conviction involved dishonesty or false statement, and did not weigh the probative value of the evidence against its prejudicial effect.

At the Rule 609 hearing out of the presence of the jury, the defense requested that the trial court order that the State refer to Luellen's prior conviction for aggravated robbery as only a "felony" or "serious felony."  The defense maintained that identification of the prior conviction as an aggravated robbery would be prejudicial, despite the fact that the aggravated robbery charge had been dismissed the prior day.  The court initially stated that it would take the defense's request that the felony not be identified under advisement.  However, when the State indicated that the court needed to make that determination in order for Luellen to decide whether he would testify, the court stated, "Oh, [if] that [is the case], I'm going to allow it[.]" The court added, "I'm going to allow it.  He's been convicted of a felony, convicted of Aggravated Robbery.  I think it's relevant.  It may be prejudicial but I think it's relevant for him to be asked about his previous record."

We have previously held that Rule 404(b) of the Tennessee Rules of Evidence provides guidance in determining the appropriate review of procedural errors under Rule 609.  State v. Lankford, 298 S.W.3d 176, 181 (Tenn. Crim. App. 2008).  Both rules require the trial court to engage in an explicit analysis of the evidence before it is admitted.  Under Rule 404(b), evidentiary matters are reviewed for an abuse of discretion only if the trial court has substantially complied with the procedural prerequisites of the rule.  Dubose, 953 S.W.2d at 652.  However, if the trial court did not substantially comply with the procedural requirements, then its decision is not entitled to deference by the court, and "the determination of admissibility will be made by the reviewing court on the evidence presented at the jury out hearing."  Id. at 653.  Thus, under Rule 404(b), the reviewing court is required to independently determine the admissibility of the evidence based upon the record and evidence presented at the jury-out hearing when procedural requirements were not met.  Just as in Rule 404(b), if a trial court fails to comply with the procedural requirements of Rule 609, then the court's decision to admit or exclude a prior conviction is not entitled to deference by the reviewing court.  When the trial court, as in this case, does not follow the procedural guidelines required by Rule 609, we must independently determine the admissibility of the prior impeaching conviction based on the evidence presented.

-15-

We have repeatedly held that convictions for aggravated robbery are probative of an accused's credibility. See Galmore, 994 S.W.2d at 122 ("Robbery is a crime involving dishonesty and may be used for impeachment purposes."). Aware that our independent review of the evidence is limited to the evidence presented at the Rule 609 hearing, we hold the probative value of Luellen's credibility is not substantially outweighed by the unfair prejudicial effect on the substantive issues. Accordingly, we conclude that the trial court properly admitted Luellen's prior conviction for the purposes of impeachment.

Although the trial court erred in not considering whether the prior conviction involved dishonesty or false statement, not determining the similarity between the crime on trial and the prior felony conviction, and not weighing the probative value of the evidence against its prejudicial effect, we conclude that the trial court did not err in admitting Luellen's prior aggravated robbery conviction for impeachment purposes. We must now determine whether the trial court's procedural errors in this case "affirmatively or more probably than not affected the judgment to [Luellen's] prejudice." Waller, 118 S.W.3d at 374 (citing Tenn. R. App. P. 36(b); Galmore, 994 S.W.2d at 125). Upon review, we conclude that Luellen is not prejudiced by the trial court's errors. Id. (citing Taylor, 993 S.W.2d at 35).

Luellen did not testify at trial and presented no other witnesses in his behalf. Importantly, Luellen failed to make an offer of proof as to any proposed testimony in this case. We note that while not required to preserve an issue for appellate review regarding the admissibility of a prior conviction for impeachment purposes, "an offer of proof may be the only way to demonstrate prejudice." Galmore, 994 S.W.2d at 125. Luellen not only failed to make an offer of proof at trial but also failed to make an argument on appeal regarding the actual content of his proposed testimony. At trial the State presented testimony from Terri Erby, the adult victim; Tanishia Erby, who spoke to Luellen the night of the kidnapping; and Sergeant Harris, who overheard Luellen's demands during the offenses and was involved in Luellen's arrest nine days later. The record shows that the evidence presented against Luellen was overwhelming and undisputed. Accordingly, Luellen has failed to establish that he was prejudiced by the trial court's ruling to admit the prior aggravated robbery conviction for impeachment purposes. Therefore, we conclude that the trial court's procedural errors on this issue are harmless. See Waller, 118 S.W.3d at 374 (citing Tenn. R. App. P. 36(b); Galmore, 994 S.W.2d at 125).

**IV. Cumulative Errors.** Luellen argues that the cumulative effect of the trial errors requires a reversal of his convictions in this case. The State responds that Luellen has failed to prove that any error in this case affected the outcome of his trial. Moreover, the State asserts that even if error has occurred in this case, Luellen was still afforded a fair trial, which is supported by the fact that Luellen was convicted of two lesser included offenses at trial.

Initially, we note that although the United States Constitution and the Tennessee Constitution grant the right to a fair trial, they do not grant the right to a perfect trial. State v. Gilliland, 22 S.W.3d 266, 273 (Tenn. 2000) (citing State v. Smith, 755 S.W.2d 757, 765 (Tenn. 1988)). The Tennessee Supreme Court recently defined the doctrine of cumulative error:

> The cumulative error doctrine is a judicial recognition that there may be multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial.

State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010) (citations omitted). The Hester court also found that United States v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993), provided helpful insight regarding the cumulative error doctrine. Hester, 324 S.W.3d at 77. In Sepulveda, the United States Court of Appeals for the First Circuit provided guidance for appellate courts when considering whether the aggregated errors at trial deprived a defendant of a fair trial:

> Of necessity, claims under the cumulative error doctrine are sui generis. A reviewing tribunal must consider each such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the [trial] court dealt with the errors as they arose (including the efficacy–or lack of efficacy–of any remedial efforts); and the strength of the [State's] case. See, e.g., [U.S. v.] Mejia-Lozano, 829 F.2d [268,] 274 n.4 [(1st Cir. 1987)]. The run of the trial may also be important; a handful of miscues, in combination, may often pack a greater punch in a short trial than in a much longer trial.

Sepulveda, 15 F.3d at 1196.

Upon review, we conclude that the errors in Luellen's trial did not "have a cumulative effect on the proceedings so great as to require reversal in order to preserve [his] right to a fair trial." Hester, 324 S.W.3d at 76. Accordingly, Luellen is not entitled to relief on this issue.

**V.  Excessive Sentence.**  Luellen contends the trial court improperly weighed the enhancement and mitigating factors before imposing two consecutive twenty-two year sentences for his especially aggravated kidnapping convictions. The State responds that the sentence is not excessive and that Luellen is not entitled to relief on this issue.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d), Sentencing Comm'n Comments. This court has additionally held that "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." Id. (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim.. App. 1992)). Because the trial court erred in its application of the enhancement factor regarding possessing a firearm during the commission of the offenses, our review is de novo without a presumption of correctness. See id. at 345-46; Ashby, 823 S.W.2d at 169.

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); Carter, 254 S.W.3d at 343.

Here, Luellen committed the offenses in this case on June 17, 2007. The Compiler's Notes to the amended Tennessee Code Annotated section 40-35-210 (2006) state that the amended act "shall apply to sentencing for criminal offenses committed on or after June 7, 2005." Accordingly, Luellen was sentenced under the 2005 amendments to the sentencing act. We note that the 2005 amendments to the 1989 Sentencing Act prevent a defendant from arguing on appeal that the trial court improperly weighed the enhancement and mitigating factors.

Here, the trial court applied the following enhancement factors:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;
(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
. . . .
(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community;
(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense[.]

Id. § 40-35-114 (1), (2), (8), and (9) (2006). The record is unclear whether the court applied enhancement factor (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high[.]" Id. § 40-35-114(10) (2006). Moreover, because the trial court did not explicitly apply certain enhancement factors to particular convictions, we must assume that the court intended to apply all of the aforementioned enhancement factors to all of the convictions in this case.

Regarding the mitigation factor that Luellen ultimately released his victims unharmed, the court stated:

[D]oes [Luellen] deserve some special recognition for not killing the victim[s]? I'm not sure he does. I mean, he abducted them. This was an episode of horror. The lady said he threatened her. He intimidated her. She was concerned about the child. She thought she'd die at any moment.

Well, I guess . . . I must because of mitigation say thank God he didn't seriously injure these people. But I'm not certain – I'm not capable of giving him consideration for that. I still think he deserves the maximum punishment and he deserves consecutive time.

Regarding the length of Luellen's sentence, the court stated, "The facts and circumstances and the deterrent [e]ffect in my judgment demands the maximum [sentence]." For the especially aggravated kidnapping convictions, Luellen's sentencing range was fifteen to twenty-five years. Id. § 40-35-112(a)(1) (2006). In addition, for the aggravated kidnapping conviction, Luellen's sentencing range was eight to twelve years. Id. § 40-35-112(a)(2) (2006). Finally, for the aggravated criminal trespass conviction, Luellen's sentence could not be greater than eleven months and twenty-nine days. Id. § 40-35-111(e)(1) (2006). The trial court sentenced Luellen as a Range I, violent offender to two consecutive sentences of twenty-two years at one hundred percent for the especially aggravated kidnapping convictions, a concurrent ten-year sentence at one hundred percent for the aggravated kidnapping conviction, and a concurrent sentence of eleven months and twenty-nine days for the aggravated criminal trespass conviction, for an effective sentence of forty-four years in the Tennessee Department of Correction. The court then merged the aggravated kidnapping conviction regarding the child victim with the especially aggravated kidnapping conviction regarding the child victim.

Luellen first argues that enhancement factor (1) should have been given very little weight given that he does not have a significant criminal history. The record shows that Luellen had a prior felony conviction for aggravated robbery, for which he was on parole or probation at the time that he committed the offenses in this case. Also, Luellen was out on bond for the offenses against Tanishia Erby at the time he committed the offenses against Terri Erby and her grandchild. In addition, Luellen had a prior misdemeanor conviction for theft. We conclude that the trial court properly applied the enhancement factor that Luellen had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]" Id. § 40-35-114 (1) (2006).

Second, Luellen argues that the trial court erred in applying enhancement factor (8), that he previously "failed to comply with the conditions of a sentence involving release into the community[.]" Although he acknowledges that he was on probation and bond for separate offenses when he committed the offenses in this case, he claims that his previous failures to comply with terms of release should be given little weight because the present offenses are non-parole offenses for which he will have to serve eighty-five percent of his sentences before being eligible for release. Luellen clearly misunderstands this enhancement factor, and we find his argument unconvincing. Accordingly, we conclude that the trial court's application of this factor was proper.

Third, Luellen contends that the trial court improperly applied the enhancement factor regarding his possession of a firearm during the commission of the offense, since the use of a firearm is an element of the offense of especially aggravated kidnapping against Terri Erby. He further contends that although the jury rejected the State's theory that a weapon was used in the offense against the granddaughter, the court improperly used the presence of a weapon

to enhance Luellen's sentence for this offense. In response, the State acknowledges that this enhancement factor was improperly applied because the use of a firearm is an element of the offense of especially aggravated kidnapping against Terri Erby. However, the State asserts that application of the other enhancement factors are supported by the record and warrant the imposition of a forty-four-year sentence. We agree that the remaining enhancement factors are sufficient to support the imposition of the two twenty-two-year sentences.

Fourth, Luellen argues that the trial court erred in failing to give any weight to the mitigating factor that Luellen released both victims unharmed. However, the 2005 amendments to the 1989 Sentencing Act prevent a defendant from arguing on appeal that the trial court improperly weighed the enhancement and mitigating factors. Pursuant to Carter, 254 S.W.3d at 346, "[a]n appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." We agree. Luellen is not entitled to relief on this issue.

Finally, we note that although Luellen claims that the court erred in enhancing Luellen's sentence "by nearly a factor of three" to arrive at an effective forty-four-year sentence, he does not specifically argue that he should not have received a consecutive sentence. Consequently, Luellen has waived any argument regarding consecutive sentencing. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); Tenn. R. App. P. 27(a)(7) (A brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). Waiver notwithstanding, we conclude that the trial court did not err in imposing consecutive sentences for the two especially aggravated kidnapping convictions.

Finally, we must address an issue regarding one of the judgment forms. We note that the judgment form for the misdemeanor aggravated criminal trespass conviction is blank regarding the percentage of the sentence which the defendant must serve before being eligible for work release, furlough, trusty status, and rehabilitative programs. Section 40-35-302(d) (2006) requires that when the trial court fails to designate a percentage of service for a misdemeanor sentence, the percentage shall be zero. Id. However, the requirement does not apply when the transcript from the sentencing hearing shows that the trial court intended a period of continuous confinement. State v. Russell, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999); see also State v. Josh Moon, No. E2000-00690-CCA-R3-CD, 2001 WL 237348, at *3 (Tenn. Crim. App, at Knoxville, Mar. 6, 2001). Here, the transcript and the judgment form show that the trial court intended for Luellen to serve a sentence of eleven months and twenty-

nine days in continuous confinement for this conviction with a percentage of service of one hundred percent, with this sentence served concurrently to his other sentences. Typically, a percentage not greater than seventy-five percent of the sentence should be fixed for a misdemeanor offender. Id. at 392. Therefore, we remand for entry of a corrected judgment to insert a service percentage of seventy-five percent for the aggravated criminal trespass conviction. This sentence will be served concurrently to his other sentences in this case.

## **CONCLUSION**

Upon review of the record, we affirm the judgments of the trial court but remand for entry of a corrected judgment to insert a service percentage of seventy-five percent for the aggravated criminal trespass conviction.

_____
CAMILLE R. McMULLEN, JUDGE